UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SERGEANT OF POLICE ANDRE SCE,

                                    Plaintiff,

                                                                <u>COMPLAINT</u>

            - against -

THE CITY OF NEW YORK, DEPUTY CHIEF              **Jury Trial Demanded**
PAUL CIORRA, CAPTAIN TIMOTHY
MORGAN, and LIEUTENANT PETER SALLIE
all individually as well as in their official capacity
as employees of the New York City Police
Department,

                                    Defendants.

-------------------------------------------------------------x

        New York City Police Department Sergeant Andre Sce, by his attorney, The Law Office

of Fred Lichtmacher, PC alleges the following, upon information and belief, as for his

Complaint:

<u>**Introduction**</u>

        The Plaintiff is a male African-American, highly accomplished member of Highway

Patrol; an elite unit within the New York City Police Department (hereinafter, NYPD).  While

Highway permits "token blacks" in its ranks, Highway regularly, through overtly discriminatory

practices, prevents minorities from joining its ranks, or on the rare occasions in which minorities

are admitted into Highway, they are treated differently and worse than Caucasian officers.  This

practice is perpetuated even when minority officers demonstrate clearly exceptional policing

skills, which is the case in the instant matter.  Supervisors at Highway, pursuant to a *de facto*

policy, intentionally interfere with minority officers' ability to perform, to the detriment of the

public, in order to eliminate minority officers from being present in Highway and/or from

excelling and/or rising through the ranks.  In the matter before this Court, the terms and

conditions of the plaintiff's employment were severely altered for the worse, premised solely on

his race.  The few people of color within Highway, for the most part, are there as show pieces

and/or to do the dirty work of implementing discriminatory practices, under the direction of

bigoted supervisors.  People of color within Highway are intentionally precluded from being seen

in the media, or in parades, or presidentials as the face of Highway, in order to maintain its image

as an elite white unit.

### Jurisdiction and Venue

1       Jurisdiction is founded upon the existence of a Federal Question pursuant to 28 U.S.C. §

1331.

2       This action arises under 42 U.S.C. §2000e-2(a), i.e., Title VII; the Equal Protection clause

of the Fourteenth Amendment pursuant to 42 U.S.C.  § 1983; as well as under the Administrative

Code of the City of New York, § 8-107 et seq.

3       This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 & §1343(3&4).

4       Plaintiff respectfully requests this Court exercise pendent jurisdiction pursuant to 28

U.S.C. § 1367 over plaintiff's New York City Administrative Code claims which arise out of the

same common nucleus of operative facts as do plaintiff's federal claims.

5       Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. §

1391(b) (1) as the NYPD is located at 1 Police Plaza in New York County, New York.

6       Plaintiff's Fourteenth Amendment constitutional claims are brought to redress the

deprivation of federal rights by both the City of New York and the individual defendants who

were acting as state actors under color of law.

7      This action arises from the ongoing practice of the NYPD to exclude, discriminate against and discourage people of color from joining and staying in its elite units; in the instant matter, the elite unit is Highway.

## Parties

8      Andre Sce is a citizen of the United States of African descent.

9      At all times relevant, Andre Sce is an employee of the NYPD serving as a Sergeant of Police for Highway.

10      Defendant, the City of New York, is a Municipal Corporation within New York State.

11      Pursuant to its Charter, the City of New York has established and maintains the NYPD as a constituent department or agency.

12      At all times relevant, the City of New York employed the personnel involved in the incidents giving rise to this lawsuit.

13      Defendant, the City of New York, through the NYPD, employs more than five hundred employees for each working day in each of twenty or more calendar weeks in the current, preceding and in all relevant calendar years.

14      Defendant Deputy Chief Paul Ciorra, formerly Inspector Ciorra, was at all times relevant, a duly appointed and acting Inspector employed by the NYPD and assigned at all times relevant to the District Headquarters of Highway in Queens, New York.

15      At all times relevant, defendant Ciorra was acting under color of law.

16      Defendant Deputy Chief Ciorra, (formerly Inspector Ciorra) at all times relevant, an agent, servant and employee acting within the scope of his employment with defendant City of New York and through his authority as a supervisor, was capable of and did in fact determine and

enact policy for NYPD Highway and through his authority as a supervisor and as one of Sce's direct supervisors, he was capable of and did in fact adversely effect the terms and conditions of plaintiff's employment.

17      Defendant Captain Timothy Morgan was, at all times relevant, a duly appointed and acting Captain employed by the NYPD and assigned during portions of the complained about incidents to Highway 3, and at other times he was assigned to the District Headquarters of Highway in Queens, New York.

18      Captain Morgan is a Caucasian male.

19      At all times relevant, Defendant Morgan was acting under color of law.

20      Defendant Captain Morgan was, at all times relevant, an agent, servant and employee acting within the scope of his employment with defendant City of New York and through his authority as a supervisor, he was capable of and did in fact determine and enact policy for NYPD Highway and through his authority as a supervisor and as one of plaintiff's direct supervisors, he was capable of and did in fact adversely effect the terms and conditions of plaintiff's employment.

21      Defendant Lieutenant Peter Sallie was, at all times relevant, a duly appointed and acting Sergeant employed by the NYPD and assigned at all times relevant to Highway 3,

22      At all times relevant, defendant Lieutenant Sallie was acting under color of law.

23      Defendant Lieutenant Sallie was, at all times relevant, an agent, servant and employee acting within the scope of his employment by defendant City of New York and through his authority as a supervisor and as one of plaintiff's direct supervisors, he was capable of and did in fact adversely effect the terms and conditions of plaintiff's employment.

-4-

24      Pursuant to the New York City Administrative Code §8-107(13) the defendant City of New York is liable for the discriminatory conduct of the individual defendants who exercised managerial and supervisory responsibility over the actors causing plaintiff's harms as well as because NYC knew of its employee's discriminatory conduct, and acquiesced in such conduct and/or failed to take immediate and appropriate corrective action and thereby caused plaintiff's harms.

## Condition Precedent to Suit

25      On or about September 19, 2015, and within one hundred and eighty days of the last act of the ongoing conduct complained of pursuant to Title VII of the Civil Rights Act of 1964, Andre Sce filed a complaint with the Equal Employment Opportunity Commission (EEOC) premised on his being discriminated against due to his race.

26      The EEOC assigned Charge Number 520201503786 to Andre Sce's claim.

27      On or about June 28, 2016 the United States Department of Justice, Civil Rights Division mailed a right to sue letter to Andre Sce, which was received in early July of 2016 by Sce's attorney.

28      This action was commenced within 90 days of the issuance of Sce's right to sue letter.

29      All actions complained of herein, were brought in a timely manner, and the matters complained of herein, which standing alone would appear not timely brought, were part of an ongoing continuing pattern of behavior which continued unabated from the beginning of Sce's tenure with Highway, up to and including the date of this complaint's filing.

## Facts Underlying Plaintiff's Claims for Relief

30      Key to understanding the bigotry within Highway is that the supervisors, whether or not they openly encourage the other supervisors and their subordinates to discriminate against non-whites, do virtually nothing to eliminate the bigotry which infests Highway.

31      The highest ranking members of Highway, during the periods complained of herein, including but not limited to Ciorra, knew of and routinely ignored and implicitly, if not explicitly, encouraged defendants, including Captain Morgan, to maintain the bigoted status quo at Highway, to the detriment of the plaintiff.

32      Despite the overwhelming evidence that Highway discriminates against African-Americans, which could easily be witnessed visually within the Commands, defendants Ciorra and the other supervisors do nothing to prevent such discrimination from continuing unabated.

33      Andre Sce was transferred from the 33rd Precinct and assigned to the Highway District to begin a refresher course as a newly assigned sergeant on August 22, 2011.

34      On September 4, 2011, he began working in Highway Unit 3 and he was officially assigned on October 20, 2011.

35      Sce was subjected to intimidating tactics, *ab initio*, in an effort to force him out of Highway.

36      From the beginning of his tenure with Highway, Sce has been subjected to overt discrimination premised on him being African-American and such discrimination has been continuous and ongoing and has been virtually unabated since the commencement of the actions complained of herein.

37     Throughout his tenure in Highway, Sce received almost no motorcade time in presidentials; this is a prestigious assignment something Caucasian members of Highway perform routinely and these assignments frequently lead to overtime.

38     Early in Sce's tenure at Highway, on October 25, 2011, Captain Morgan falsely reported Sce AWOL and with the help of a Lieutenant, directed a police unit to his residence.

39     Defendant Sallie was contacted which resulted in a Lieutenant interrogating Sce's neighbors and forcibly stopping his fiancé on the street where she was inappropriately treated.

40     Police personnel presented to Sce's home and maliciously and intentionally scared and embarrassed his family and maliciously interviewed his family and his neighbors for no legitimate law enforcement purpose.

41     On approximately October 27, 2011, while in the administrative office, Defendant Morgan referred to Sce and his family as people of poor character and informed several officers, that Sce's fiancé is a "perp."

42     On December 21, 2011, Sce had a department motor vehicle accident and was out on Line of Duty (LOD) sick until January 9, 2012.

43     On December 21, 2011, a lieutenant stated to Sce's fellow officers that Sce was off post to go to McDonald's-presumably because in Highway's racist world, that is where all African-Americans eat.

44     Sce attempted to use his accrued time but he was told he could not, forcing him to use his LOD sick.

45     On January 11, 2012 Sce was informed that he was getting a command discipline (CD) by Captain Morgan.

46      January 17, 2012, Sce was officially presented with a false CD for not reporting sick properly.

47      Morgan intimidated Sce with threats that Sce would  not be allowed to obtain therapy for his job related injuries.

48      A supervisor informed Sce that he was not hurt during the accident; which was not true.

49      Morgan's and other supervisor's actions not only interfered with Sce receiving needed therapy but also caused him to fear asking for medical treatment that he might need in the future and generally caused him to fear Highway coming after him with more false allegations.

50      In January of 2012 Sce's previously authorized vacation time was maliciously interrupted by defendant Morgan and he was ordered back to work, for no legitimate reason.

51      On that same date, Sce was falsely reported AWOL by defendants Morgan and Sallie among other ranking members of Highway who sought to give legitimacy to the false allegation.

52      Starting on January 11, 2012, Sce had several involuntary tour changes, inequitable minimal overtime compared to similarly situated Sergeants, distasteful assignments, and unwarranted frequent threats to force him out of Highway.

53      Distasteful assignments include Communications, Summons Self Inspections, JOC, Last Minute Notifications/Details, Targeted Tour Changes, Fuel Pumps, and desk duty.

54      On January 17, 2012 during a CD interrogation, defendant Morgan for no reason other than racial animosity accused Sce of being an unfit supervisor; this CD interview was conducted the day after the CD was issued.

55      On February 1, 2012 a white cross was placed in the tree on Sce's property.

56      Sce reported the incident to a supervisor, who stated it was strange, and who curiously stated, he had nothing to do with it.

57      Sce then reported to the Lieutenant to obtain a threat assessment which was not given to him, in violation of NYPD protocol, even though he reported the incident to his command.

58      From January 2012 to May of 2013 defendant Morgan repeatedly, falsely accused Sce of abusing overtime; an accusation which was fully rebutted by police records.

59      Department overtime slips verified Sce had not done what defendant Morgan falsely accused him of doing.

60      In February of 2012 defendant Morgan told Sce that he is a thief, a liar, a snake, a clear abuser of overtime and that he must submit all of his overtime slips to the command's Integrity Control Officer (ICO).

61      Sce was subjected to a different procedure than other similarly situated Sergeants, in being forced to submit his overtime slips directly to the ICO, instead of to his direct supervisors.

62      As per Captain Morgan's orders, the vast majority of his overtime slips were directly submitted to the ICO from January 17, 2012 until he was transferred out, May 20, 2013, from Captain Morgan's Highway Unit 3.

63      From 2012 up to the filing of his EEOC complaint, Sce routinely received the lowest overtime opportunities of any similarly situated person in Highway.

64      For the most part, when Sce was offered overtime it was unsought and unfavorable, such as during holidays-which is a kind of abuse to which other similarly situated officers are not subjected.

65      However, when the EEOC complaint was filed in the instant matter, Sce's overtime, almost instantly, increased.

66      The failure to allow Sce to perform overtime was done intentionally to try to coerce Sce to voluntarily leave overwhelmingly Caucasian Highway.

**Attempts to Remove Sce's Firearms**

67      In January of 2012 Morgan fabricated that Sce is suicidal in his first attempt to have Sce's weapons removed.

68      If he had been successful, this could have resulted in Sce being thrown out of Highway.

69      On four separate occasions the bosses at Highway (in particular Morgan) brought false allegations against Sce in attempts to take his guns away, something that would necessarily limit the assignments he could be given, render him less safe and further Morgan's intended end to label Sce as an unfit supervisor;

On January 17, 2012, by Captain Morgan;

On September 29, 2014, Lieutenant Sallie implied that he was suicidal via text message;

On March 6, 2015, by Lieutenant Sallie and Captain Morgan; and

On April 18, 2015, Department Psychologist and the Personnel Lieutenant attempted to do so influenced by Sce's supervisors.

70      On January 17, 2012, Defendants Morgan and others questioned Sce without a delegate present even though one was requested. Defendants threatened Sce informing him they would falsely allege that Sce admitted being suicidal if he were to make a complaint about being mistreated.

71     In September of 2014 defendant Sallie made false allegations in an attempt to have Sce's firearms removed, which did not succeed.

72     On one such occasion the defendants actually removed Sce's guns for one day before they were ordered returned.

**Additional Disparate Treatment**

73     On July 4, 2012 Sce intervened during a gunpoint robbery, disarming the gunman and protecting the potential victim from harm.

74     This was accomplished without Sce having to fire his weapon.

75     Defendant Morgan, despite being informed of Sce's acts, did not disclose these facts to defendant Ciorra and instead he ignored this act-the type of action which is routinely recognized and commended within the NYPD.

76     Ciorra informed Sce that neither defendant Morgan nor anyone else, had ever informed Ciorra of Sce's encounter with the armed gunman which Sce had intervened to prevent.

77     When he was made aware of the incident, Ciorra informed Sce that he did not deserve any special departmental recognition because he had not been shot or injured.

78     After Sce had prevented the aforementioned armed robbery, in 2013 a white sergeant from Highway assisted a state police officer with an arrest and Highway District wrote a letter to the Chief of the Department for the officer to receive recognition.

79     This white officer received departmental recognition and Sce had not-in spite of the fact that the incident Sce was involved with was more dangerous and his actions more heroic.

80     The white officer was neither shot nor injured; the criteria Ciorra had informed Sce was needed for special departmental recognition to be given to Sce.

-11-

81     On July 9, 2012, Morgan and a lower ranking supervisor attempted to issue another false

CD to Sce for allegedly not reporting to the joint Operation Center for an assignment he was

never notified to attend.

82     When it was discovered, unequivocally, that Sce had not been notified of the assignment,

the false charges went forward anyway.

83     After successfully defending against the false charges, Sce was involuntarily removed

from his shift on July 16, 2012 and Captain Morgan personally served him with the tour change

notification.

84     In April of 2013 Sce applied for a position as a Closing Investigation Squad (CIS)

Supervisor; a position for which he was clearly qualified.

85     After he drafted the application, defendant Ciorra discarded it, without a legitimate

justification, effectively ending Sce's chance for that assignment.

86     Sce was then informed that if he wanted that position he would have to contact "Uncle

Phil," referring to an African-American Chief to approve his application and that he was

eliminated for consideration for that position.

87     Ciorra solicited Sce for a position as the Highway District Training Sergeant for the

newly formed Collision Technician Group and Collision Investigation Squad and he was

transferred to that job in May of 2013.

88     In return for his accepting the position as a Training Sergeant, Sce was promised

extensive CIS training by Ciorra which he was never given.

89     Sce was subsequently told the courses were too hard or advanced for him to grasp and he was denied the promised CIS training; despite the fact that less qualified white officers receive CIS training.

90     At that time, Ciorra, on 4/18/13, and a Lieutenant, on 4/24/13, advised Sce that Morgan is a racist who favors his white officers and that Sce should just accept any position in order to safely distance himself from Morgan.

**Time as a Training Sergeant**

91     While in his new position, Sce created many new protocols, still employed today; something which was not even mentioned in his evaluations.

92     In Highway the regular practice is for sergeants to work for one supervisor.

93     However, from May of 2013 until September of 2014, Sce was the only sergeant assigned to do the work for four separate supervisors simultaneously.

94     Additionally, Sce was the only sergeant not given adequate assistance, which forced him to cover many assignments that available police officers should have been covering.

**Additional Hostile and Disparate Ongoing Treatment**

95     On or about August 12, 2013, Morgan informed Sce that he was to stay away from Highway Unit 3 and that he is not allowed to use his personnel or facility.

96     From August 2013 until Defendant Morgan was removed on October 24, 2015, Sce was repeatedly interfered with in parking in the spot designated specifically for him; Eventually Sce got permanently removed from having an assigned parking spot altogether.

**Evaluations**

97      Sce's accomplishments as a member of the NYPD are outstanding, as is reflected in a

very rare perfect evaluation in all categories he was rated in for the period from 1/16/13-1/15/14.

98      However, during the next rating period, at the instruction of his supervisors, defendant

Sallie lowered Sce's grades in his evaluation.

99      Sce's evaluation should have been exceptionally high, if they were performance based,

and Sallie informed Sce that Highway will attack his evaluations because the CO did not believe

he should have a great evaluation, as it interferes with Morgan and the former Highway CO's

cover needed to transfer Sce out.

100     This was done in spite of the quality of Sce's work and to eliminate the problems

Highway supervisors would encounter if they tried to remove him from Highway while he

continued to receive outstanding evaluations.

101     On October 29, 2014 Sallie explicitly informed Sce that the CO was angry because he did

not want Sce to have a great annual review.

## Continuing Harassment

102     On October 29, 2014 Sce went into the Inspector's office to talk with him about the poor

treatment and to inform him of his concerns.

103     Instead of addressing the issues Sce had raised, the Inspector, turned it around, blaming

Sce.

104     Sce was often berated publicly by both defendants Morgan and Sallie with statements

made by Sallie including that he has no respect for Sce.

105     On June 19, 2014 defendant Sallie informed Sce that he was no longer permitted to give

out training and that Sallie would be the only person handling such affairs.

-14-

106     In July of 2014, Defendant Morgan intentionally permitted another Sergeant to park in Sce's assigned spot, solely to harass Sce.

107     On July 9, 2014 Morgan visited Sce's area, sitting at Sce's desk and rudely putting his feet on his desk and using his phone to talk with Sce's immediate supervisor, defendant Sallie, about trivial matters for an extended period of time.

108     Morgan did this despite having his own cell phone on his person and having the option of using the six remaining free desks while Sce was forced to stand and wait until Morgan was done talking.

109     During this time Sce overheard part of the conversation Morgan was having with Sallie in which Morgan falsely reported that Sce did not log in and he was stealing time-both allegations being patently false-leading to an investigation by defendant Sallie.

### Sce Reports the Discrimination He Is Encountering

110     On October 28, 2014 Sce complained to Defendant Sallie about the things being done to him at the hands of Captain Morgan and other supervisors, and Sallie acknowledged he was aware of these things; yet he took no action.

111     Sce informed Sallie that defendant Morgan had made racist comments to him and while Sallie had witnessed some of the incidents, Sallie replied that he had not witnessed any of the incidents.

112     On October 29, 2014 Sce informed his CO that he was being targeted by defendants Morgan and other supervisors, but he turned a deaf ear, and incredibly, the CO informed Sce that this was not his problem.

### Sce Is Thrown out of the District

-15-

113     In late October 2014 Sce was thrown out of the District when defendant Sallie informed

him that the new CO wanted to get rid of him.

114     The CO  stated, through Sallie, that Sce was " useless" and he wanted to get rid of him.

115     Upon information and belief, the then CO was informed by defendant Sallie and others

that everyone hates Sce which is not and was not the case.

116     On October 29, 2014, an Inspector from Highway informed Sce that his direct supervisor

at the time, defendant Sallie, had said that Sce was useless and disruptive.

117     On October 29, 2014 the then CO told Sce he is unproductive and ill suited to work in a

fast paced agency such as Highway, which was entirely rebutted by his perfect evaluation.

118     The CO then informed Sce that he did not see a future for him in Highway and that he

should choose another command.

119     On November 1, 2014 a Sergeant confirmed to Sce that defendant Sallie had informed

him as well as the Inspector, that Sce was hated by everyone at the Highway School.

120     That same Sergeant was able to circumvent a malicious decision made by defendant

Sallie to send Sce to Highway 5, which would have horribly inconvenienced Sce, and instead, he

was able to arrange for the Inspector to send Sce to the Highway School.

121     Throughout his tenure at Highway comments were frequently made to Sce about him

being friends with then Chief Phillip Banks, one of the highest ranking members of the NYPD

and an African American, as if Sce were only at Highway due to Banks' influence.

122     When on October 31, 2014 Chief Banks resigned from the NYPD, the defendants,

especially Morgan, felt completely unfettered in their ability to harass and intimidate Sce further

who they now viewed as no longer being "protected" within the Department.

123     In October of 2014, defendant Sallie removed Sce from several responsibilities, including representing Highway at Command Level Training by replacing him with a person below him in rank.

124     On November 1, 2014, Sce was officially removed from the Highway District and assigned as a Radar/Lidar Instructor.

125     Sce was assigned to teaching at the Highway School, a position which is traditionally a police officer's and not a sergeant's role, where Sce works without adequate resources, assistance or support.

126     Sce worked teaching Radar and Lidar training as the primary instructor from November 2014 through December 2015.

127     On November 20, 2014 Sce was removed from representing Highway in open forums.

128     Sce personally purchased a laptop to better perform his duties.

129     Defendant Sallie informed Sce that if he finds out he is "playing with this toy (laptop) he will be thrown out of Highway;" this was stated even though Sce only purchased and has used the laptop for job related tasks.

130     Other officers were assigned laptops to perform their tasks, something Sce was denied after he had asked for one, which forced him to purchase his laptop with his own funds, and that laptop is dedicated primarily to assisting Sce in performing his job.

131     From November 8, 2014 through October 31, 2015, Sce has been the only Highway District Supervisor required to work regularly on Saturdays.

-17-

132     Sce's Saturday assignment is a newly created position requiring him to appear by 5:00 a.m. to answer phones as a telephone switchboard operator; a position, which upon information and belief, is routinely only assigned to police officers.

133     Sce taught for over a year as the primary instructor for the entire NYPD in Radar/Lidar training and he was not permitted to have a day off.

134     On April 4, 2015 CBS news was coming to conduct an interview at the Highway School where Sce was teaching.

135     Sce should have been the one interviewed, however, it was mandated at the last moment for Sce to go to the range that day and a young Caucasian police officer was interviewed in his place as the face of Highway.

136     This was highly unusual, as Sce is the primary instructor for Lidar training and his Caucasian replacement had no Highway experience, was being trained by Sce, and was certainly not as qualified to be interviewed.

137     Defendant Morgan openly deemed that white officer to be the "face of Highway."

138     In June of 2015 Morgan falsely accused Sce of driving at 100 mph through "his" parking lot, an act which could be deemed a crime.

139     On July 29, 2015 Morgan informed other instructors at the Highway School that he would rather have his teeth pulled out without Novocain than to be in Sce's class.

140     In August of 2015 Sce stayed late to do free overtime work, to enhance and produce new Highway forms, something he has done on numerous occasions, from 2011-2015 without requesting to be paid for his time.

-18-

141     However, Morgan, without any reason, chased Sce out of the building, in front of at least one witness.

142     Morgan has given white officers paid overtime for sweeping the floors at Highway, but he would not allow Sce to perform overtime for free to create new forms and to make Highway more efficient; something Sce has done prolifically during his tenure at Highway.

143     Sce has frequently created new forms which have been adopted by Highway, without receiving any recognition by Highway for his contributions or achievements.

144     On October 27, 2015 Defendant Sallie informed Sce that many people, and he listed several of them, did not like him.

145     When Sce began working for Morgan at Highway 3 his overtime dropped and when Morgan was transferred to the District his overtime went back up.

146     However, when coincidentally Morgan was also transferred to District, unofficially in October of 2014 and in December officially, Sce's overtime again decreased.

147     Despite his outstanding performance, Sce is routinely deprived of advancement opportunities which white officers receive; he gets less overtime than similarly situated white officers; he repeatedly faces false charges in an effort to get him to leave Highway; and he has been coerced into not seeking treatment for injuries received on the job and scared into not going to doctors when necessary by the threat of more false accusations looming; and Sce has been intentionally denied the same training the white officers receive.

148     Sce has been informed by his supervisors to stop blaming others for his "bad performance" which is remarkable in that his performance has never been poor.

-19-

149    Defendant Sallie has removed Sce from representing Highway at all training venues after defendant Morgan falsely claimed that Sce arranged for unauthorized Motorcycle Enforcement Training without proper consent.

150    Sce's income has been adversely effected by the defendants' racially motivated mistreatment of him; he has been emotionally harmed; his career advancement opportunities have been obliterated; he has been hidden in a school with no real chance for advancement; his excellent record as an officer has been skewed, his evaluations ordered lowered and his reputation with his colleagues has been damaged; he has been denied the use of earned benefits; he was prevented from using accrued time explicitly permitted pursuant to NYPD policies and this, and other hostile acts have all been done without legitimate reasons other than the defendants' racism and desire to maintain a mostly white Highway command.

### FIRST CLAIM FOR RELIEF
### VIOLATION OF PLAINTIFF'S
### RIGHTS UNDER TITLE VII, 42 U.S.C. §2000e-2(a) (1 & 2)
### AGAINST THE CITY OF NEW YORK

151    Plaintiff repeats the previous allegations as though fully stated herein.

152    By the actions described, Andre Sce was deprived of his rights secured by Title VII, i.e.,42 U.S.C. §2000e-2(a) (1 & 2) premised on his right to be free from discrimination based on race.

153    NYC violated Title VII 42 U.S.C. §2000e-2(a) (1) in that it discriminated against Andre Sce in the terms, conditions and privileges of his employment, because of his race and color.

154    NYC violated Title VII 42 U.S.C. §2000e-2(a) (2) in that it discriminated against Andre Sce by depriving him of employment opportunities, including but not limited to promotions and

overtime and earned benefits and otherwise adversely affected his status as an employee, because of his race and color.

155     NYC violated Title VII 42 U.S.C. §2000e-2(a) (1) (2) in that its hiring and promotion practices disqualify a substantially disproportionate numbers of blacks from being hired, and for those who are hired, they encounter disparate treatment when seeking promotions and preferred assignments within the NYPD's elite Highway units.

156     Plaintiff was subjected to racial discrimination that created an intimidating, hostile and offensive working environment.

157     The harassment plaintiff was and still is subjected to is severe and pervasive.

158     Plaintiff's supervisors were in a position to and did adversely affect the terms and conditions of plaintiff's employment.

159     Defendant City of New York knew of and disregarded the disparate and worse treatment to which the plaintiff was subjected.

160     As a direct consequence thereof, Andre Sce has been damaged; he is emotionally harmed; his career has suffered; he has been illegally denied opportunities including promotions; he has been denied overtime; he has had his employment record and career paths damaged; he has been denied prestigious assignments; he is harassed and written up frequently on false charges; he has been and continues to be pecuniarily harmed; he has been defamed in his profession; there have been physical repercussions to defendants' treatment of plaintiff directly resulting in physical problems and he has been treated differently and worse than similarly situated Caucasian employees in numerous other regards.

161     The plaintiff is entitled to compensatory damages in an amount to be determined by the trier of fact and the plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. 2005-e (5) (k).

**SECOND CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATING**
**PLAINTIFF'S RIGHTS UNDER THE ADMINISTRATIVE**
**CODE OF THE CITY OF NEW YORK§8-107(1)(a) et seq.**

162     Plaintiff repeats the previous allegations as though fully stated herein.

163     By the actions described, Andre Sce was deprived of his rights secured by the New York City Administrative Code§8-107 (1)(a) et seq., including, but not limited to his right to be free from discrimination based on race.

164     As a direct consequence thereof, Andre Sce has been damaged; he is emotionally harmed; his career has suffered; he has been illegally denied opportunities; he has been denied overtime; he has had his employment records and career path damaged; he has been denied prestigious assignments; he is harassed and written up frequently on false charges; he has been and continues to be pecuniarily harmed; he has been defamed in his profession; there have been physical repercussions to defendants' treatment of plaintiff directly resulting in physical problems and he has been treated differently and worse than similarly situated Caucasian employees in numerous other regards.

165     The plaintiff is entitled to compensatory and punitive damages in amounts to be determined by the trier of fact and plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to New York City Administrative Code §8-502(a & g).

**THIRD CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS FOR VIOLATING
PLAINTIFF'S RIGHTS UNDER THE ADMINISTRATIVE
CODE OF THE CITY OF NEW YORK §8-107 (6) et seq.**

166    Plaintiff repeats the previous allegations as though fully stated herein.

167    By the actions described, Andre Sce was deprived of his rights secured by New York City

Administrative Code §8-107 (6).

168    Andre Sce was deprived of his right to be free from discrimination based on race in that

by the actions described, the defendants jointly and severally aided, abetted, incited, compelled

and coerced the performance and attempted performance of acts forbidden under the

Administrative Code § 8-107 (1)(a); resulting in plaintiff being subjected to disparate and worse

treatment premised on his being of African-American descent.

169    As a direct consequence thereof, Andre Sce has been damaged; he is emotionally harmed;

his career has suffered; he has been illegally denied opportunities including promotions; he has

been denied overtime; he has had his employment record and career path damaged; he has been

denied prestigious assignments; he is harassed and written up constantly; he has been and

continue to be pecuniarily harmed; he has been defamed in his profession; there have been

physical repercussions to defendants' treatment of plaintiff directly resulting in physical

problems and he has been treated differently and worse than similarly situated Caucasian

employees in numerous other regards.

170    The plaintiff is entitled to compensatory and punitive damages in amounts to be

determined by the trier of fact and that the plaintiff is entitled to an award of reasonable

attorneys' fees and costs pursuant to New York City Administrative Code §8-502(a & g).

**FOURTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATING**
**PLAINTIFF'S RIGHTS UNDER THE ADMINISTRATIVE**
**CODE OF THE CITY OF NEW YORK§8-107 (7) (I)**

171   Plaintiff repeats the previous allegations as though fully stated herein.

172   By the actions described, Andre Sce was deprived of his rights secured by the New York City Administrative Code §8-107 (7) (i) in that he was retaliated against because he opposed and complained about practices forbidden under §8-107(1)(a) & (6) as well as other illegal practices of the defendants.

173   As a direct consequence thereof, Andre Sce has been damaged; he is emotionally harmed; his career has suffered; he has been illegally denied opportunities including promotions; he has been denied overtime; he has had his employment record and career path damaged; he has been denied prestigious assignments; he is harassed and written up frequently; he has been and continue to be pecuniarily harmed; he has been defamed in his profession; there have been physical repercussions to defendants' treatment of plaintiff directly resulting in physical problems and he has been treated differently and worse than similarly situated Caucasian employees in numerous other regards.

174   The plaintiff is entitled to compensatory and punitive damages in amounts to be determined by the trier of fact and the plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to New York City Administrative Code §8-502(a & g).

**FIFTH CLAIM FOR RELIEF**
**AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATING**
**PLAINTIFF'S RIGHTS PURSUANT TO THE EQUAL PROTECTION CLAUSE**
**OF THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. §1983**

175   Plaintiff repeats the previous allegations as though fully stated herein.

176     By the actions described, Andre Sce was deprived of his rights secured by the Equal

Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. §1983.

177     Sce has been treated differently and substantially worse by the individual defendants due

to his color and race.

178     Similarly situated Caucasian officers were not subjected to the different and worse

treatment Sce received.

179     As a direct consequence thereof, Andre Sce has been damaged; he is emotionally harmed;

his career has suffered; he has been illegally denied opportunities including promotions; he has

been denied overtime; he has had his employment record and career path damaged; he has been

denied prestigious assignments; he is harassed and written up constantly; he has been and

continue to be pecuniarily harmed; he has been defamed in his profession; there have been

physical repercussions to defendants' treatment of plaintiff directly resulting in physical

problems and he has been treated differently and worse than similarly situated Caucasian

employees in numerous other regards.

180     The plaintiff is entitled to compensatory and punitive damages in amounts to be

determined by the trier of fact and the plaintiff is entitled to an award of reasonable attorneys'

fees and costs pursuant to 42 U.S.C. §1988.

**SIXTH CLAIM FOR RELIEF**
**AGAINST THE CITY OF NEW YORK PURSUANT TO MONELL**
**VIOLATION OF PLAINTIFF'S RIGHTS**
**PURSUANT TO THE EQUAL PROTECTION CLAUSE**
**OF THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. §1983**

181     Plaintiff repeats the previous allegations as though fully stated herein.

182     By the actions described, Andre Sce was deprived of his rights secured by the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. §1983.

183     Defendant NYC has a *de facto* policy of discriminating against people of color becoming members of its elite units, including Highway, and when a small number of black officers are admitted to Highway, they are treated differently and worse than similarly situated Caucasian officers.

184     Plaintiff's discrimination was premised on an official policy and/or custom that caused the plaintiff to be subjected to a denial of his constitutional rights, as protected by the Equal Protection clause of the Fourteenth Amendment.

185     As a direct consequence thereof, Andre Sce has been damaged; he is emotionally harmed; his career has suffered; he has been illegally denied opportunities including promotions; he has been denied overtime; he has had his employment record and career path damaged; he has been denied prestigious assignments; he is harassed and written up frequently; he has been and continue to be pecuniarily harmed; he has been defamed in his profession; there have been physical repercussions to defendants' treatment of plaintiff directly resulting in physical problems and he has been treated differently and worse than similarly situated Caucasian employees in numerous other regards.

186     The plaintiff is entitled to compensatory and punitive damages in amounts to be determined by the trier of fact and the plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.


<u>Request for Relief</u>

-26-

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows:

(A)    Declaratory relief as follows:

        1.    A declaration that Plaintiff's rights under Title VII, i.e., 42 U.S.C. §2000e-2(a) were violated;

        2.    A declaration that Plaintiff's rights under 42 U.S.C. § 1983, were violated;

        3.    A declaration that Plaintiff's rights under New York City Administrative Code §8-502(a) and §8-107 were violated;

(B)    Compensatory damages in an amount to be fixed at trial;

(C)    By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages from the individual defendants in an amount to be fixed at trial;

(D)    An award to plaintiff of the costs and disbursements herein;

(E)    An award of attorneys' fees pursuant to the relevant statutes, including but not limited to 42 U.S.C. §2000e-5K; 42 U.S.C.§1988 and New York City Administrative Code §8-502(f); and

(F)    Such other and further relief as this Court may deem just and proper.

Dated: September 27, 2016
      New York, New York

                                       / s /
                         Fred Lichtmacher
                         The Law Office of Fred Lichtmacher, PC
                           Attorney for Plaintiff
                         116 West 23rd Street, 5th Floor
                         New York, York 10011
                         (212) 922-9066

The City of New York
100 Church Street
New York New York 10007

-27-

Deputy Chief Paul Ciorra,
1 Police Plaza
New York, New York 10007

Captain Morgan
100th Precinct
92-24 Rockaway Beach Blvd.
Queens, NY, 11693-1527

Lieutenant Peter Sallie
198-15 Grand Central Pkwy
Hollis, NY 11423