UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------
                                                          :
  ANDRE SCE,                                               :
                                                          :         16cv7577
                                    Plaintiff,            :
                                                          :         MEMORANDUM & ORDER
              -against-                                    :
                                                          :
  CITY OF NEW YORK, *et al.*,                              :
                                                          :
                                  Defendants.            :
                                                          :
                                                          :
-----------------------------------------------------------------  :

WILLIAM H. PAULEY III, Senior United States District Judge:

              Plaintiff Andre Scé, a sergeant with the New York City Police Department

("NYPD"), brings this employment discrimination action against the City of New York (the

"City"), Deputy Inspector Sylvester Ge, Inspector Steven D'Ulisse, Deputy Chief Paul Ciorra,

Captain Timothy Morgan, and Lieutenant Peter Sallie (collectively, "Defendants").  Scé

contends that Defendants subjected him to race-based discrimination and retaliation during his

tenure as a member of the NYPD Highway Patrol ("Highway").  Defendants move for summary

judgment dismissing the claims in Scé's Second Amended Complaint.  (ECF No. 49 ("SAC").)

They also move to dismiss new allegations advanced in Scé's Third Amended Complaint.[1]  (ECF

No. 108 ("TAC").)  For the reasons that follow, Defendants' motions for summary judgment and

to dismiss the Third Amended Complaint are granted.

---

[1]       The Third Amended Complaint repeats all of the allegations in the Second Amended Complaint and then
adds new claims.  For ease of reference, Defendants' summary judgment motion is addressed in the context of the
Second Amended Complaint.

<u>BACKGROUND</u>

I.   <u>Summary Judgment Claims in the Second Amended Complaint</u>

Scé self-identifies as a mixed race, African-American.  (Pl.'s Rule 56.1 Counterstatement, ECF No. 126-22 ("Pl.'s 56.1"), ¶ 119.)  After graduating from the NYPD Training Academy in January 2004, Scé became a full-time police officer.  (Pl.'s 56.1 ¶¶ 3–5.)  In 2007, he began working at Highway.  (Pl.'s 56.1 ¶¶ 48, 51.)  Thereafter, Scé was promoted to sergeant and re-assigned to the 33rd Precinct.  (Pl.'s 56.1 ¶ 52.)  In 2011, at Scé's request, he was assigned as a supervisor to Highway 3.  (Pl.'s 56.1 ¶¶ 55, 58.)  At that time, Morgan was the Commanding Officer ("CO") of Highway 3.  (Pl.'s 56.1 ¶ 21.)

In May 2013, Scé was transferred to Highway District Headquarters where he served as the training sergeant under Ciorra.  (Pl.'s 56.1 ¶¶ 60–62; Decl. of David Shanies, ECF No. 126-1 ("Shanies Decl."), Ex. 5, at 2.)  As the training sergeant, Scé was responsible for scheduling and organizing training for members of Highway, including those in the Collision Technician Group ("CTG") and Collision Investigation Squad ("CIS").  (Pl.'s 56.1 ¶¶ 64–65; Decl. of Joseph Anci, ECF No. 117 ("Anci Decl."), Ex. F, at 58:16–59:24.)  Although Scé coordinated training, he did not provide instruction to CTG or CIS officers.  (Pl.'s 56.1 ¶¶ 65–66.)  According to Scé, after Ciorra left Highway District Headquarters, Morgan began asserting supervisory control over the unit and became its Executive Officer in December 2014.  (Pl.'s 56.1 ¶ 22; Shanies Decl., Ex. 4 ("Pl.'s Dep."), at 110:2–14.)

In October 2014, the NYPD transferred Scé from Highway District Headquarters to the Highway District Drivers Training School (the "Wheel School").  (Pl.'s 56.1 ¶¶ 71–73.)  The parties dispute the circumstances surrounding Scé's transfer to the Wheel School.  Scé claims the transfer was a demotion motivated by Morgan's animosity toward him and aimed at

limiting his overtime opportunities.  (Pl.'s 56.1 ¶ 71; Shanies Decl., Ex. 3 ("Pl.'s Decl."), ¶¶ 24,

31.)  Defendants counter that it was a promotion.  (Defs.' Local Rule 56.1 Statement of

Undisputed Material Facts, ECF No. 118 ("Defs.' 56.1"), ¶¶ 71, 79.)

   In September 2015, Scé filed a charge with the Equal Employment Opportunity

Commission ("EEOC") alleging employment discrimination at Highway.  (Anci Decl., Ex. T.)

One year later, he filed this action against the City, Ciorra, Morgan, and Sallie.  (ECF No. 2.)

Scé asserts that Defendants discriminated against him based on his race by denying him

promotional opportunities, damaging his career path, and treating him worse than similarly

situated white employees.  (See generally SAC ¶¶ 292–301.)  Scé also maintains that Morgan

made racist comments to him and denied him overtime opportunities.  (Pl.'s Decl., ¶¶ 3, 5, 31–

32.)

   Following the filing of the EEOC charge and this lawsuit, Scé contends that he

was subjected to retaliation for speaking out about alleged racism at Highway.  For example,

after learning about Scé's lawsuit in a New York Daily News article in September 2016,

D'Ulisse—who was the CO of Highway—began instructing all members of the Wheel School

about anti-retaliation policies.  (Pl.'s 56.1 ¶¶ 11, 149–50.)  Scé testified that D'Ulisse, Ge (the

Executive Officer of Highway), and Sergeant Donald Schneider subjected him to increased

scrutiny, denied him promotional opportunities, and brought false disciplinary charges against

him.  (Pl.'s Dep., at 301:5–306:20, 345:11–347:8.)  To buttress his own testimony, Scé submits a

declaration from Police Officer Edward Rosovich recounting Rosovich's observations of

Schneider's conduct from 2014 to 2018.  (See generally Shanies Decl., Ex. 8 ("Rosovich

Decl.").)  Rosovich states that he heard Schneider refer to Scé in pejorative racial terms and that

Schneider spoke to other supervisors about plans to harm Scé's career.  (See, e.g., Rosovich Decl. ¶¶ 7, 9.)

According to Defendants, Scé never received a demotion in rank or a reduction in pay.  (Pl.'s 56.1 ¶¶ 86–87.)  Scé also acknowledged that he frequently continued working after hours without making any claim for overtime.  (Pl.'s 56.1 ¶ 177.)  While Scé maintains that he wanted a position in CTG or CIS, he never applied to transfer to either of those units in 2017 or 2018.  (Defs.' 56.1 ¶¶ 125–26; Anci Decl., Ex. N ("Schneider Decl."), ¶¶ 58, 62.)

On summary judgment, Scé brings claims for: (1) discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) violations of the Equal Protection Clause and for First Amendment retaliation under 42 U.S.C. § 1983; and (3) discrimination and retaliation under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").[2]

II.      Motion to Dismiss Claims in the Third Amended Complaint

The following facts are drawn from the Third Amended Complaint and are presumed true for purposes of this motion.  Scé alleges that Defendants retaliated against him after he filed the Second Amended Complaint in June 2018.  Specifically, in February 2019, Scé was subjected to a Patrol Guide hearing.  (TAC ¶¶ 327–38.)  Scé claims that Ge instigated a panoply of false charges against him: (1) using illegal drugs; (2) stealing money from the City; (3) unauthorized tour changes; (4) failing to report where he lived; (5) improper use of an NYPD computer; (6) improper communications with the news media; (7) using offensive language; (8) altering police reports; (9) shopping while on duty; (10) avoiding NYPD tracking of police

---

[2]      Scé abandoned his remaining claims in the Second Amended Complaint, including Title VII discrimination based on theories of hostile work environment and disparate impact, as well as a Monell claim against the City. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. and Mot. to Dismiss, ECF No. 126 ("Pl.'s Mem."), at 4 n.1.)

officers; and (11) working while intoxicated.  (TAC ¶¶ 329–36.)  Scé maintains that the NYPD

never provided him with a copy of these charges.  (TAC ¶ 330.)  Then, in May 2019, Scé alleges

that Ge conducted a Patrol Guide hearing concerning two violations of departmental rules and

regulations: (1) creation/use of an "unauthorized form," and (2) computer misuse.  (TAC ¶¶ 294–

97.)  Scé maintains that these charges—which are currently pending—are baseless.  (TAC

¶¶ 310, 318, 320.)  The Third Amended Complaint brings retaliation claims pursuant to: (1) Title

VII; (2) the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL");

and (3) the NYCHRL.

DISCUSSION

I.     Legal Standard

Summary judgment is proper only where "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial."  Baez v. JetBlue Airways Corp., 793 F.3d

269, 274 (2d Cir. 2015) (quotation marks omitted).  This Court is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The party seeking summary judgment bears the burden of establishing that no

genuine issue of material fact exists . . . ."  Rodriguez v. City of New York, 72 F.3d 1051, 1060–

61 (2d Cir. 1995).  If the moving party meets its burden, "the adverse party must set forth

specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250 (citation

and quotation marks omitted); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment," as "conclusory allegations or denials cannot by themselves create a

genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d

159, 166 (2d Cir. 2010) (citation and alterations omitted).  "In determining whether a genuine

issue of material fact exists, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party."  Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir.

2001).

On a motion to dismiss, a court accepts all facts alleged in the complaint as true

and construes all reasonable inferences in a plaintiff's favor.  ECA, Local 134 IBEW Joint

Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009).  Nevertheless, a

complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted).

To survive a motion to dismiss, the court must find the claim rests on factual allegations that

"raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007); see also Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a probability

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."

(quotation marks omitted)).  "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  Iqbal, 556 U.S. at 679.

II.     Summary Judgment Claims in the Second Amended Complaint

a.   Motion to Strike

Before addressing the merits of Defendants' motion for summary judgment, this

Court must consider to what extent it will consider evidence from the Rosovich declaration.  In

their reply brief, Defendants seek to preclude the entire declaration, arguing that the subject matter of Rosovich's testimony was not properly disclosed.  (Reply Mem. of Law in Further Supp. of Defs.' Joint Mot. for Summ. J. and to Dismiss, ECF No. 129 ("Defs.' Reply"), at 2.) This Court construes Defendants' argument as a motion to strike under Federal Rule of Civil Procedure 37.

Rule 26(a) requires a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  A party must also "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect [its] disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  This preclusionary rule applies on motions for summary judgment. See, e.g., Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 n.2 (S.D.N.Y. 2004).  Its purpose is to prevent the practice of "sandbagging" an opposing party with new evidence.  Ventra v. United States, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000).

Courts in this Circuit recognize that preclusion pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with caution.  Ventra, 121 F. Supp. 2d at 332.  In determining whether to exclude challenged material, a court must consider: "(1) the party's

explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (alterations in original) (quotation marks omitted).  A showing of bad faith is not required for a court to impose sanctions under Rule 37.  Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006).

Here, Defendants concede that Scé's initial pre-trial disclosures on May 26, 2017 listed Rosovich as an individual likely to have discoverable information under Rule 26(a)(1)(A).  (Defs.' Reply, at 2.)  According to these disclosures, Scé identified Rosovich as an officer who received special assignment pay and was recommended to be a Detective Specialist.  But in opposing summary judgment, Scé submitted a declaration from Rosovich concerning Rosovich's observations of fellow officers' alleged racially-motivated conduct.  (See generally Rosovich Decl.)  Defendants assert that Scé failed to supplement the subject matter on which Rosovich was expected to testify under Rule 26(e)(1)(A), and therefore, his declaration should be precluded.

The timing of Rosovich's declaration is troubling.  That declaration was executed the day before Scé's opposition to the summary judgment motion was due, and Scé explains the delay by claiming that he had just learned that Rosovich witnessed racially-motivated conduct.  (Pl.'s Mem., at 38 n.6.)  While Scé disclosed Rosovich's name and some "subjects" about which he might have discoverable information, he failed to supplement those disclosures under Rule 26(e)(1)(A).

Nonetheless, this Court finds that Scé's failure to supplement the subject matter of Rosovich's proposed testimony was harmless.  See, e.g., Krawec v. Kiewit Constructors Inc.,

2013 WL 1104414, at *7 (S.D.N.Y. Mar. 1, 2013) (finding that failure to disclose witness's

contact information and the subject area of his testimony was not "tantamount to providing no

disclosure" at all); see also Perkins v. Air & Liquid Sys. Corp., 2015 WL 4610671, at *5

(S.D.N.Y. July 30, 2015) (adopting the reasoning of Krawec and noting that courts have

"declined to preclude parties from relying on witnesses whose identities but not the subjects of

their testimony were disclosed"); Peterson v. Pan Am Railways, Inc., 2015 WL 2451227, at *3

(N.D.N.Y. May 21, 2015) (same).  Defendants' reliance on Pal v. New York University is

misplaced because Scé identified Rosovich in his initial disclosures as a potential witness.  2008

WL 2627614, at *3 (S.D.N.Y. June 30, 2008).  Although Scé should have supplemented his

disclosures and explained the delay in revealing Rosovich's explosive testimony, Defendants had

an opportunity to depose Rosovich.  Nevertheless, to the extent Rosovich makes totally or

wholly conclusory allegations in his declaration, this Court will not consider them.  This

mitigates the potential for prejudice to Defendants.  And finally, were this case to proceed to

trial, there are less drastic alternatives to preclusion including reopening discovery to afford

Defendants an opportunity to depose Rosovich.  Accordingly, Defendants' motion to strike the

Rosovich declaration is denied.

      b.  Title VII Discrimination Claims

        Scé claims that he suffered discrimination and disparate treatment on the basis of

his race in violation of Title VII.  Title VII makes it unlawful for an employer "to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin."  42

U.S.C. § 2000e-2(a)(1).  Title VII race discrimination claims are subject to the well-established

McDonnell Douglas burden-shifting framework.  Kirkland v. Cablevision Sys., 760 F.3d 223,

225 (2d Cir. 2014) (per curiam).  First, an employee must establish a prima facie case of

discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Kirkland,

760 F.3d at 225.  "To state a prima facie case of race discrimination, a plaintiff must proffer

evidence that (1) he belongs to a protected group; (2) he was qualified for his position; (3) his

employer took an adverse action against him; and (4) the adverse action occurred in

circumstances giving rise to an inference of race discrimination."  Kirkland, 760 F.3d at 225.

Once a prima facie case is established, the burden shifts "to the employer to

articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."

McDonnell Douglas, 411 U.S. at 802.  Assuming the employer does so, "the burden then shifts

back to the plaintiff to show that the employer's explanation is a pretext for race discrimination."

Kirkland, 760 F.3d at 225.  At that stage, "to defeat summary judgment[,] . . . the plaintiff's

admissible evidence must show circumstances that would be sufficient to permit a rational finder

of fact to infer that the defendant's employment decision was more likely than not based in

whole or in part on discrimination."  Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (ellipsis

in original) (quotation marks omitted).  "The ultimate burden of persuading the trier of fact that

the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

i.  Statute of Limitations

As an initial matter, Defendants argue that Scé's Title VII claims should be

dismissed in part as time-barred.  For Title VII claims, a plaintiff must file an EEOC charge

within 300 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1); McGullam v. Cedar

Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69

(2d Cir. 2006) (per curiam).  Defendants assert that because Scé filed his EEOC charge on

September 19, 2015, any claims relating to conduct before November 23, 2014—300 days before

the EEOC charge—are untimely.

Typically, "discrete discriminatory acts are not actionable if time barred, even

when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act

starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within

the . . . 300-day time period after the discrete discriminatory act occurred."  Nat. R.R. Passenger

Corp. v. Morgan, 536 U.S. 101, 113 (2002).  However, "[t]he existence of past acts and the

employee's prior knowledge of their occurrence . . . does not bar employees from filing charges

about related discrete acts so long as the acts are independently discriminatory and charges

addressing those acts are themselves timely filed.  Nor does the statute bar an employee from

using the prior acts as background evidence in support of a timely claim."  Nat. R.R. Passenger

Corp., 536 U.S. at 113.

Moreover, under the continuing violation doctrine, if a "plaintiff files an EEOC

charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of

discrimination, all claims of acts of discrimination under that policy will be timely even if they

would be untimely standing alone."  Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155–56

(2d Cir. 2012) (quotation marks omitted).  But that "doctrine applies only to claims composed of

a series of separate acts that collectively constitute one unlawful practice.  As such, the doctrine

generally applies to hostile work environment claims," rather than to discrete discriminatory acts.

Velez v. N.Y.C. Police Pension Fund Article II, 2019 WL 1382884, at *7 (S.D.N.Y. Mar. 27,

2019) (citations and quotation marks omitted); see Barrett v. Forest Labs., Inc., 39 F. Supp. 3d

407, 459 (S.D.N.Y. 2014).  Specifically, the "doctrine does not apply to discrete unlawful acts,

even if the discrete acts were undertaken pursuant to a general policy that results in other discrete

acts occurring within the limitations period." Velez, 2019 WL 1382884, at *7 (emphasis and quotation marks omitted); accord Chin, 685 F.3d at 157. Typically, "allegations of overtime violations . . . constitute discrete acts." Villar v. City of New York, 135 F. Supp. 3d 105, 128 (S.D.N.Y. 2015); Anderson v. N.Y.C. Dep't of Corr., 2013 WL 5229790, at *3 (S.D.N.Y. Sept. 17, 2013) ("[T]he continuing violation exception does not apply because each denial of overtime, training, and change in duties are considered individual 'discrete acts' against [plaintiff].").

Accordingly, Scé's Title VII discrimination claims are time-barred to the extent they relate to conduct occurring before November 23, 2014. However, this would not preclude his post-November 23, 2014 denial of overtime claims.

ii.   Prima Facie Case of Discrimination

Defendants do not dispute that Scé has satisfied the first two elements of his prima facie case. Scé self-identifies as a mixed race, African-American man and is therefore a member of a protected class. (Mem. of Law in Supp. of Defs.' Joint Mot. for Summ. J. and to Dismiss, ECF No. 119 ("Defs.' Mem."), at 10; Pl.'s 56.1 ¶ 119.) As a police officer with the NYPD since January 2004 who regularly received excellent and satisfactory performance reviews, he was qualified for his position as a sergeant in Highway. (Pl.'s 56.1 ¶¶ 3, 96–118.) Instead, Defendants contend that Scé has not demonstrated that he suffered an adverse employment action or that the circumstances give rise to an inference of discrimination. (Defs.' Mem., at 6–10.)

An adverse employment action is a "materially adverse change in the terms and conditions of employment." Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (quotation marks omitted). In order to qualify as adverse, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry, 336 F.3d at

138 (quotation marks omitted).  Examples of such an action include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  Terry, 336 F.3d at 138 (alteration and quotation marks omitted).  Although the Second Amended Complaint alleges a veritable laundry list of supposed adverse employment actions, Scé does not respond to Defendants' arguments regarding many of those claims.  Therefore, claims such as Scé's exclusion from candidacy for the role of Special Events Coordinator, his transfer to the Wheel School, and Defendants' alleged promise to promote him to CO of the Wheel School are deemed abandoned.[3]  See Jackson v. Fed. Exp., 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.").  Instead, his opposition focuses on two adverse employment actions: (1) failure to promote, and (2) deprivation of his overtime opportunities.  (Pl.'s Mem., at 14–28.)

1.   Failure to Promote

Scé argues that Defendants repeatedly prevented him from applying for supervisory positions in CTG and CIS.  (SAC ¶¶ 260, 266, 269, 271; Pl.'s Mem., at 24.)  To establish a discrimination claim based on the employer's failure to promote, a plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for the job in question; (3) he was denied the job; and (4) he was "rejected under circumstances which give rise to an inference of unlawful discrimination."  Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009) (quotation marks omitted); accord Brown v. Coach Stores, Inc., 163 F.3d 706, 709–10 (2d Cir. 1998).

---

[3]     Scé's transfer to the Wheel School occurred in October 2014.  (Pl.'s 56.1 ¶ 72.)  Therefore, any claim based on that discrete act is also time-barred.

Here, Scé was aware of the promotional opportunities, yet never applied.  (Pl.'s Mem., at 26–27.)  Ordinarily, "the second element of a prima facie case cannot be established merely with evidence that a plaintiff generally requested promotion consideration."  Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004).  Instead, a "specific application" for a given position is normally required.  Petrosino, 385 F.3d at 227.  However, Scé contends that Schneider and D'Ulisse intentionally removed him from internal e-mail chains regarding open positions that were circulated in Highway.  (Pl.'s Dep., at 345:11–347:8.)  By advancing that argument, he attempts to avail himself of an exception to the "specific application" requirement.

Under this "narrow" exception, an "employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer."  Petrosino, 385 F.3d at 227; see also Mauro v. S. New England Telecomms., Inc., 208 F.3d 384, 387 (2d Cir. 2000) (per curiam) ("[T]hat [specific application] requirement does not apply where . . . the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them.").  Defendants acknowledge that certain open supervisory positions—for example, at CTG—were advertised informally through internal e-mails at Highway.  (Anci Decl., Ex. E ("D'Ulisse Dep."), at 120:19–122:11.)  Neither party offered further evidence, such as the e-mails themselves, to indicate when they were sent.  Viewing the evidence in the light most favorable to plaintiff, this Court finds that the vacancies were not "posted."  See Petrosino, 385 F.3d at 227 (concluding that first prong of specific application exception satisfied after assuming "employees . . . could not reasonably have known about all available positions through the company's posting policy"); see also Martinez v. Conn.

14

Dep't of Corr., 125 F. Supp. 3d 397, 415 (D. Conn. 2015) (finding the Petrosino exception cannot be read "so categorically as to disappear merely because an employer publicizes a position to any degree whatsoever, regardless of the manner in which a posting is distributed and the likelihood that it will be seen by potential applicants").

But Scé fails to satisfy the Petrosino exception because he acknowledged that he knew about the promotional opportunities from discussions with fellow sergeants.  (Pl.'s Dep., at 345:12–22.)  Moreover, Scé offers no evidence that he expressed an interest in these supervisory positions or that he attempted to apply informally.  See Petrosino, 385 F.3d at 227 (determining that second prong of specific application exception was not satisfied because of plaintiff's "failure to apply, at least informally, for the specific management positions that she knew were vacant in her department" (emphasis in original)); Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., 2007 WL 259937, at *14–15 (S.D.N.Y. Jan. 29, 2007) (granting summary judgment to employer on failure to promote claims in which plaintiff could not demonstrate she informally applied for non-posted positions), aff'd, 307 F. App'x 596 (2d Cir. 2009); cf. Harding v. Wachovia Capital Markets, LLC, 2012 WL 4471543, at *7–8 (S.D.N.Y. Sept. 21, 2012) (finding that plaintiff presented sufficient evidence to establish that he applied for a position where he expressed interest in the position and the parties disputed whether the position was formally posted).

In contrast, while Scé was a sergeant in Highway 3 in 2013, he did apply for a position in CIS.  (Pl.'s Dep., at 198:19–21.)  According to his testimony, this was the only time he officially applied for a position in CIS.  (Pl.'s Dep., at 198:23–25.)  Instead of receiving that position, Ciorra assigned Scé to be the training sergeant in Highway District Headquarters.  (Pl.'s 56.1 ¶¶ 60, 62.)  But in fact, Scé states in his Rule 56.1 Counterstatement that he "opted to move to Highway District" and considered it a promotion.  (Pl.'s 56.1 ¶¶ 60–61.)

Even if Scé could demonstrate that he was denied promotional opportunities, Defendants maintain that he was not qualified for these supervisory positions in CTG and CIS. The Second Circuit has held that in determining whether a plaintiff was qualified for a position, he must establish "basic eligibility for the position at issue." Aulicino, 580 F.3d at 81 (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91–92 (2d Cir. 2001)). Moreover, "being 'qualified' refers to the criteria the employer has specified for the position." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 127 (2d Cir. 2004) (quoting Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 29 (2d Cir. 1997)). According to Defendants, CIS and CTG perform investigative roles, and require a background in investigations or detective work. (Anci Decl., Ex. K ("Ciorra Decl."), ¶ 17.) And experience in CTG was required prior to consideration for CIS. (Ciorra Decl. ¶ 18; Schneider Decl. ¶ 59.) Defendants contend that Scé lacked both of these prerequisites: (1) he never worked in CTG, and therefore was ineligible for CIS; and (2) he did not have an investigative background to qualify for either unit. (Ciorra Decl. ¶ 17; Schneider Decl. ¶¶ 59–60.)

Scé counters in conclusory fashion that he was well-qualified for supervisory positions in CTG and CIS because he had experience arranging training in CTG and CIS. (Pl.'s Mem., at 26; Pl.'s Dep., at 104:17–23.) According to Defendants, as the training sergeant in Highway, Scé was responsible for scheduling and organizing the training of members of Highway, as well as tracking and scheduling training for members of CIS. (Pl.'s 56.1 ¶¶ 64–65.) Therefore, Scé himself does not claim that he engaged in the investigatory work of CIS or CTG, or that he provided instruction for members of CIS or CTG.[4] See Nguyen v. Dep't of Corr. &

---

[4]      Scé disputes this evidence in his Rule 56.1 Counterstatement. It is axiomatic that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). However, Scé's responses do not raise material disputes of fact. Scé merely talks past Defendants' assertions and

Cmty. Servs., 169 F. Supp. 3d 375, 387 (S.D.N.Y. 2016) ("Where a plaintiff cannot show that he

was eligible for the position sought, he fails to make a prima facie case under Title VII.");

Siddiqi v. N.Y.C. Health & Hosps. Corp., 572 F. Supp. 2d 353, 369 (S.D.N.Y. 2008) (concluding

that the "[p]laintiff fail[ed] to make a prima facie case that [d]efendant's failure to promote [him]

was discriminatory," because he failed to that show he was qualified for the relevant position).

Even if Scé could show that he was qualified for a promotion and he applied for

it, he still must show that this adverse employment decision "occurred under circumstances that

give rise to an inference of invidious discrimination." Vivenzio v. City of Syracuse, 611 F.3d

98, 106 (2d Cir. 2010) (citing McDonnell, 411 U.S. at 802). Under a "disparate treatment"

theory, a plaintiff may raise an inference of discrimination "by showing that the employer

subjected him to disparate treatment, that is, treated him less favorably than a similarly situated

employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.

2000). The plaintiff must "show [he] was 'similarly situated in all material respects' to the

individuals with whom [he] seeks to compare [himself]." Graham, 230 F.3d at 39 (quoting

Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)). In the failure to promote

context, that means comparing the qualifications of a plaintiff with those of the person promoted.

See Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003). "Whether two employees are

similarly situated ordinarily presents a question of fact for the jury." Graham, 230 F.3d at 39.

"But this rule is not absolute and 'a court can properly grant summary judgment where it is clear

that no reasonable jury could find the similarly situated prong met.'" Cine SK8, Inc. v. Town of

---

repeats multiple times that his responsibilities as training sergeant "were more expansive than mere work with computers, suggesting that Ciorra believed [Scé] had broader skills than mere facility with computers." (Pl.'s 56.1 ¶¶ 63–66.) Judges in this district have taken defendants' facts as admitted where plaintiff's counter-statement did not introduce any material dispute. See, e.g., Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of Plaintiff's purported denials—and a number of his admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts."). Therefore, these responses do not create a dispute of fact.

Henrietta, 507 F.3d 778, 790–91 (2d Cir. 2007) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001)).

Here, Scé asserts that he was at least as qualified as the white sergeants who received similar supervisory positions in CIS and CTG. (Pl.'s Decl. ¶¶ 17–19.) But he offers no particulars regarding their credentials or qualifications, which specific positions they received, and when they applied for them. Without more, Scé cannot create a genuine dispute of fact as to whether he was similarly situated to these sergeants. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact."). Moreover, "[a]lthough [Scé] may disagree with [Defendants'] determination that [these sergeants] [were] more qualified than he, courts are not permitted to second-guess the reasonableness of the employer's criteria for employment or the merits of its selection for the position." Crews v. Trs. of Columbia Univ., 452 F. Supp. 2d 504, 526 (S.D.N.Y. 2006); accord Nguyen, 169 F. Supp. 3d at 390. Accordingly, Scé fails to carry his burden of establishing a prima facie case of discrimination based on his failure to promote claims.

### 2. Deprivation of Overtime Opportunities

Scé argues that Defendants discriminated against him by denying him overtime opportunities. (Pl.'s Mem., at 20–22.) A deprivation of overtime opportunities may constitute an adverse employment action. See Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (plaintiff demonstrated adverse employment action because she "was not allowed to earn overtime pay or comp time and that she was the only employee required to submit written requests to work overtime"); see also Mazyck v. Metro. Transp. Auth., 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012) ("[Plaintiff's] allegation that he was denied opportunities for overtime satisfies

the third prong of his <u>prima facie</u> case.").  Moreover, as described above, any acts before

November 23, 2014 are time-barred.

      Here, Scé has not demonstrated an adverse employment action because "[t]here is

no evidence that [he] requested overtime . . .  and that [he] was denied overtime."  <u>Bowen-Hooks</u>

<u>v. City of New York</u>, 13 F. Supp. 3d 179, 218 (E.D.N.Y. 2014).  Indeed, although Scé stated that

he "always [made] [himself] available for overtime, and every time they offered it, [he] accepted

it . . . ," (Pl.'s Dep., at 330:10–11), he does not point to any specific overtime opportunities that

he was denied, <u>see, e.g.</u>, <u>Turley v. ISG Lackawanna, Inc.</u>, 803 F. Supp. 2d 217, 236 (W.D.N.Y.

2011) ("Plaintiff does not identify any instance where he was denied requested overtime work so

that it could be given to others.").  To the contrary, Scé testified that there were instances in

which <u>he</u> rejected overtime opportunities: "Instead of incurring overtime, I would start the next

platoon.  So, I wouldn't incur the overtime, which is better for the department."  (Pl.'s Dep., at

307:11–14; Pl.'s 56.1 ¶ 177.)

      In further support of his argument, and to demonstrate discriminatory overtime

practices, Scé submitted a chart showing his placement in Highway, his supervising officer, and

the corresponding number of overtime hours he received.  (Pl.'s Mem., at 9.)  According to Scé,

when Morgan was his supervisor, Scé received fewer overtime hours—and less income—

compared to years in which he had different supervisors.  (Pl.'s Mem., at 21.)  While Scé

attempts to compare his overtime hours with other sergeants in Highway, his data does not

specify whether these sergeants were in the same unit as Scé or even whether they were in

Highway at the time.  (<u>See</u> Decl. of Joel Wertheiner, ECF No. 126-21, ¶ 21 ("One limitation of

this data is that the City did not provide the dates that the sergeants worked in Highway from

2011 to 2018, so we cannot be sure whether officers were in different departments or precincts

when they incurred the overtime.").)  This is fatal to Scé's case because no reasonable jury could

find based on the evidence that Scé received less overtime opportunities without further

information regarding his comparators.  Moreover, Scé himself recognizes that the sample of

African-American sergeants who allegedly received less overtime is too small to establish

meaningful numbers to show an inference of race discrimination, (Pl.'s Mem., at 10).  See Pollis

v. New Sch. for Soc. Research, 132 F.3d 115, 121 (2d Cir. 1997) ("The smaller the sample, the

greater the likelihood that an observed pattern is attributable to other factors and accordingly the

less persuasive the inference of discrimination to be drawn from it.").

 "Thus, absent other sufficient evidence, statistics that might be admissible as

probative circumstantial evidence of discrimination are not enough to establish a genuine factual

dispute."  Bussey v. Phillips, 419 F. Supp. 2d 569, 583 (S.D.N.Y. 2006).  To meet his burden,

Scé points to several remarks that he contends evince discrimination.  "The circumstances that

give rise to an inference of discriminatory motive include actions or remarks made by

decisionmakers that could be viewed as reflecting a discriminatory animus."  Chertkova v. Conn.

Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996).  In determining whether a remark is probative

of discrimination, courts consider "(1) who made the remark (i.e., a decisionmaker, a supervisor,

or a low-level co-worker); (2) when the remark was made in relation to the employment decision

at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as

discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to

the decision-making process)."  Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

 Scé contends that Morgan, who had control over Scé's overtime assignments

during the periods when he was his superior officer, once called him "boy" while he was in

Highway Unit 3, (Pl.'s Decl. ¶ 3), and made a comment Scé interpreted as calling African-

Americans "nickel-and-diming" people, (Pl.'s Dep., at 94:5–12).  As to timing, Scé presents no

admissible evidence as to when these statements were made.  According to the Second Amended

Complaint, Morgan made the "nickel-and-diming" statement on December 22, 2011 and the

"boy" statement sometime between 2011 and 2013.  (SAC ¶¶ 52, 281.)  Although pre-November

23, 2014 conduct may be used as background evidence, his deposition testimony and declaration

do not offer any further context.  These remarks—while abhorrent—fail to demonstrate a

sufficient nexus to Scé's denial of overtime opportunities.  See Abdu-Brisson v. Delta Air Lines,

Inc., 239 F.3d 456, 468 (2d Cir. 2001) ("[T]he stray remarks of a decisionmaker, without more,

cannot prove a claim of employment discrimination.").  Without any "other indicia of

discrimination," Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998), Scé cannot

establish a prima facie case based on a denial of his overtime opportunities.

   iii. Legitimate, Nondiscriminatory Reasons

    Even if this court were to conclude that Scé demonstrated a prima facie case of

discrimination based upon the failure to promote claim,[5] Defendants have nevertheless offered a

legitimate, nondiscriminatory reason for their challenged conduct.  At this second stage of the

McDonnell Douglas framework, an employer's burden is to "clearly set forth, through the

introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact,

would support a finding that unlawful discrimination was not the cause of the employment

action."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (emphasis and quotation

marks omitted).  Here, as described above, Defendants have proffered sufficient evidence that—

even if Scé applied for these positions—he was not qualified to be a supervisor in CTG or CIS.

---

[5] Although Scé does not demonstrate his prima facie case based on either adverse employment action, this Court will nonetheless analyze the failure to promote claim for the sake of completeness.  The overtime opportunities claim does not merit further discussion, especially because Scé failed to provide Defendants with a copy of his overtime calculations.  (Defs.' Reply, at 12.)

See Jimenez v. City of New York, 605 F. Supp. 2d 485, 524–25 (S.D.N.Y. 2009) (finding that "employers enjoy unfettered discretion to choose among qualified candidates and to decide which types of credentials are of the most importance for a particular job" (quotation marks omitted)); Sarmiento v. Queens Coll., 386 F. Supp. 2d 93, 97–98 (E.D.N.Y. 2005) ("Defendant's decisions regarding the professional experience and characteristics sought in a candidate . . . are entitled to deference."), aff'd, 153 F. App'x 21 (2d Cir. 2005).

        iv.  Pretext

Finally, Scé has failed to adduce any further evidence to rebut the claim that Defendants failure to provide promotional opportunities was based on anything other than Defendants' claimed reasoning. At this stage, the plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" Weinstock, 224 F.3d at 42 (alterations in original) (quotation marks omitted).

Again—relying only on his own deposition testimony—Scé claims that he was as qualified as the sergeants who received positions in CTG and CIS. Viewing the evidence in the light most favorable to the plaintiff, this Court notes that Scé testified that one individual—Sergeant Leonard—was allegedly given a position in CIS but did not have a detective background. (Pl.'s Dep., at 233:15–25.) However, Scé does not provide any further details about Sergeant Leonard, including whether he had an investigative background, whether he previously worked in CTG, and when he received this position. As best this Court can discern, the only specific promotional opportunity in CIS or CTG that Scé references is in March 2018 when Scé he claims to have been excluded from consideration for a supervisory position in CTG.

(SAC ¶¶ 266–67.)  After reviewing the record, this Court interprets Scé allegation to relate to a position given to Sergeant Joseph Montuori.  (D'Ulisse Dep., at 120:19–123:3.)  Scé provided no further information regarding Sergeant Montuori, including his qualifications.  But without any additional evidence regarding his comparators, Scé cannot show that his credentials were "so superior to the credentials of the [individuals] selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate[s] selected over the plaintiff for the job in question."  Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (quotation marks omitted), superseded in part and on other grounds by Fed. R. Civ. P. 37(e).

The evidence Scé offers regarding discriminatory intent does not lead to a different conclusion.  See Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 76 (2d Cir. 2016) (observing that "a court should examine the record as a whole . . . to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer" (quotation marks omitted)).  Scé contends that both D'Ulisse and Schneider were in charge of personnel decisions and intentionally excluded him from learning about these open positions.  Scé testified that he never personally heard D'Ulisse make any racial remarks, (Pl.'s Dep., at 315:6–13), and there is no further evidence in the record regarding his discriminatory conduct.  However, Scé testified that Schneider stated in front of him that "Asians are smarter than black people."  (Pl.'s Dep., at 188:20–21.)  Although Defendants' assert that Schneider was not Scé's supervisor, the Second Circuit has held that "impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision."  Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 125 (2d Cir. 2004) (quotation marks omitted).

But the undated epithets attributed to Schneider in the Rosovich declaration, while reprehensible, do not "create a material issue of fact as to whether Defendant[s'] legitimate reasons for [denying promotional opportunities to] Plaintiff were 'more likely than not' a pretext for racial discrimination." Galimore v. City Univ. of N.Y. Bronx Cmty. Coll., 641 F. Supp. 2d 269, 285 (S.D.N.Y. 2009). That Hail Mary declaration, executed the day before Scé's summary judgment opposition was due, brims with "conclusory allegations of racism." Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997); Patterson v. Cty. of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions that are conclusory."). For example, assertions that Rosovich believed "that Sergeant Schneider was a racist and used his position as Personnel Sergeant to discriminate against black officers," (Rosovich Decl. ¶ 13), lack any evidentiary value, (see also Rosovich Decl. ¶¶ 8–11, 14). See, e.g., Greenberg v. State Univ. Hosp.-Downstate Med. Ctr., 2019 WL 4752018, at *23 (E.D.N.Y. Sept. 29, 2019) (noting that plaintiff's only evidence showing defendants' "alleged anti-Jewish animus" was a declaration submitted by defendants' employee and that the declaration alone was "plainly insufficient").

However, Rosovich's assertions that Schneider frequently used racial epithets and slurs toward African-American officers, including Scé, requires further analysis. Scé himself does not assert that he ever heard Schneider use a racial epithet—aside from his remark that "Asians are smarter than black people." And Rosovich does not offer a single detail about any such use of epithets, except to say that he recalled hearing them "[o]n many occasions between 2014 and 2018." That is not enough to raise a triable issue of fact because Scé cannot establish a connection between these undated comments and the challenged conduct at issue. See Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007) (concluding that "the more remote

and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination"), abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); see also Smith v. New York & Presbyterian Hosp., 440 F. Supp. 3d 303, 338 (S.D.N.Y. 2020) (finding alleged stray remark made "around one year before any alleged adverse action—too temporally removed to be probative").  Accordingly, Defendants' motion for summary judgment is granted as to Scé's Title VII claims.

    c.  42 U.S.C. § 1983 Claims

       Scé brings claims under § 1983 against Morgan and D'Ulisse for violations of the Equal Protection Clause and for First Amendment retaliation.  (Pl.'s Mem., at 34–37.)  "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right."  Back, 365 F.3d at 122.  Where, as here, the color of state law requirement is satisfied,[6] a plaintiff's Equal Protection Clause claim "parallels his Title VII claim" and he may bring such claims against individual defendants.  Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 88 (2d Cir. 2015) (quotation marks omitted); see also Patterson, 375 F.3d at 225 ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of . . . the Equal Protection Clause.").[7]  Accordingly, for the same reasons Defendants are entitled to summary judgment on Scé's Title VII claims, they are entitled to summary judgment on his § 1983 Equal Protection Clause claims as to each individual Defendant.

---

[6]    Scé has demonstrated that the deprivations he alleges were under color of state law because they were committed by state employees acting in their official capacities as NYPD officers.  See, e.g., Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004); Hayut v. State Univ. of N.Y., 352 F.3d 733, 744 (2d Cir. 2003).

[7]    However, the statute of limitations for § 1983 claims in New York is three years.  Patterson, 375 F.3d at 225.  Scé filed his Complaint on September 27, 2016, and therefore, any acts occurring prior to September 27, 2013 are time-barred.  This does not alter the Court's analysis.

For a First Amendment retaliation claim under § 1983, a public employee must demonstrate that "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." Garcia v. Hartford Police Dep't, 706 F.3d 120, 129–30 (2d Cir. 2013) (per curiam) (alterations in original) (citations and quotation marks omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999); accord Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008).

While Scé's initial Complaint alleges racism against him, it may arguably constitute a matter of public concern. Compare, e.g., Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 252 (2d Cir. 2006) (noting that the Second Circuit has "repeatedly held that discrimination in a government workplace is a matter of public concern"), with Ruotolo, 514 F.3d at 190 ("Because [plaintiff's] lawsuit concerns essentially personal grievances and the relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern and cannot sustain a First Amendment retaliation claim."). Scé's attorneys' remarks to the press regarding alleged systemic racism at Highway can be considered a "matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983); see also Garcia, 706 F.3d at 130 (finding plaintiff's press conference "spoke about a matter of public concern, namely, whether the police department was discriminating against Hispanics").

Regardless, Scé has not established that he suffered an adverse employment action or that his speech was at least a substantial or motivating factor in these alleged adverse

employment actions.  In the Second Circuit, an adverse action under the First Amendment

encompasses "retaliatory conduct that would deter a similarly situated individual of ordinary

firmness from exercising his or her constitutional rights . . . ."  Zelnik v. Fashion Inst. of Tech.,

464 F.3d 217, 225 (2d Cir. 2006) (quotation marks omitted).  "In this context, '[a]dverse

employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in

pay, and reprimand.'  This list of retaliatory conduct is certainly not exhaustive, however, and

'lesser actions may also be considered adverse employment actions.'"  Zelnik, 464 F.3d at 217

(alteration in original) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).

   Here, Scé alludes to "false and manufactured disciplinary proceedings" initiated

against him.  (Pl.'s Mem., at 37.)  In the Second Circuit, the institution of disciplinary

proceedings is sufficient to constitute an adverse employment action.  Skehan v. Vill. of

Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon,

531 F.3d 138 (2d Cir. 2008).  However, Scé concedes that he was never presented with any

formal charges and was only subjected to an "investigation."  (Pl.'s Dep., at 302:4–305:5.)

"[D]istrict courts in this Circuit have disagreed as to whether an investigation into disciplinary

charges that does not result in any discipline may be sufficient [to] constitute an adverse action in

the retaliation context."  Campbell v. N.Y.C. Transit Auth., 93 F. Supp. 3d 148, 177 n.30

(E.D.N.Y. 2015) (emphasis added).  In the instant case, Scé acknowledges that these

"investigations" did not lead to any official disciplinary proceedings, suspensions, or a command

discipline.  (Pl.'s Dep., at 230:24–232:3; 302:4–305:5.)  Therefore, these "fact-finding"

investigations "consisting only of brief inquiries, and resulting in no discipline," are insufficient

to constitute adverse employment actions because these investigations "were merely 'trivial

harms' or 'petty slights or minor annoyances.'"  Tepperwien v. Entergy Nuclear Operations, Inc.,

663 F.3d 556, 569–70 (2d Cir. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548

U.S. 53, 68 (2006)); cf. Cox v. Onondaga Cty. Sheriff's Dep't, 760 F.3d 139, 147 (2d Cir. 2014)

("[A]n employer's investigation may constitute a cognizable retaliatory action if . . . conducted

in such an egregious manner as to 'dissuade a reasonable worker from making or supporting a

charge of discrimination'" (quoting Burlington N., 548 U.S. at 57)).

       Even assuming that Scé demonstrated an adverse employment action, he must

"establish the causal connection between protected expression and an adverse employment

determination indirectly by showing that the protected activity was followed by adverse

treatment in employment, or directly by evidence of retaliatory animus."  Cobb v. Pozzi, 363

F.3d 89, 108 (2d Cir. 2004) (quotation marks omitted).  He has demonstrated neither.  For

example, his claims related to the "sexual harassment" investigation were approximately ten

months after his attorneys' statements to the press and therefore too remote in time to infer

causation.  See, e.g., Ray v. N.Y. State Ins. Fund, 2018 WL 3475467, at *11 (S.D.N.Y. July 18,

2018) ("The Second Circuit has declined to establish a 'bright line to define the outer limits

beyond which a temporal relationship is too attenuated' . . . but a temporal gap of more than a

few months will generally be insufficient to raise a plausible inference of causation without

more." (quoting Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 254 (2d Cir. 2014))).  Since

Scé's only other evidence consists of conclusory statements from Rosovich, his First

Amendment retaliation claim must be dismissed.  See Deters v. Lafuente, 368 F.3d 185, 190 (2d

Cir. 2004) (per curiam) (plaintiff "may not rely on conclusory assertions of retaliatory motive,

but must offer instead some tangible proof to demonstrate that their version of what occurred

was not imaginary" (quotation marks omitted)).

     d.  NYCHRL Claims

Scé brings discrimination, retaliation, and aiding and abetting claims under the NYCHRL.  The NYCHRL is "given an independent liberal construction," Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (quotation marks omitted), in light of the statute's "uniquely broad and remedial purposes," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (quotation marks omitted).

Unlike its federal counterpart, "the NYCHRL does not require that an employment action taken against a plaintiff be 'materially adverse' in order for the plaintiff to establish a prima facie case of discrimination."  Gorman v. Covidien, LLC, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015).  Rather, to establish discrimination under the NYCHRL, "the plaintiff need only demonstrate 'by a preponderance of the evidence that [he] has been treated less well than other employees because of [his protected characteristic].'"  Mihalik, 715 F.3d at 110 (quoting Williams v. N.Y.C. Housing Auth., 872 N.Y.S.2d 27, 39 (App. Div. 2009)).  However, "[t]he standard under the NYCHRL is . . . not boundless . . . ."  LeBlanc v. United Parcel Serv., 2014 WL 1407706, at *13 (S.D.N.Y. Apr. 11, 2014).

Scé's NYCHRL discrimination claims suffer from the same defects that plague his federal claims.  For example, Scé fails to offer any evidence that he applied for and was qualified for promotional opportunities in CIS and CTG.  This is fatal to his claim even under the NYCHRL.  See, e.g., Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 679–80 (S.D.N.Y. 2012) (finding plaintiff's failure to offer "any evidence that she applied for a position — or even asser[t] that she generally requested promotions" failed to establish a prima facie case under the NYCHRL).  Moreover, Scé fails to raise an issue of material fact as to whether Defendants' alleged denial of these opportunities was "caused at least in part by discriminatory . . . motives." Mihalik, 715 F.3d at 113.  As mentioned above, assuming Scé was denied promotional

opportunities in CTG and CIS, Defendants contend that Scé did not have an investigatory background or experience in CTG that would qualify him to work for CIS. Although Scé points to other sergeants who supposedly received these positions, he provides no further evidence about their qualifications.

Similarly, even assuming Scé was denied overtime opportunities when he worked under Morgan, Defendants show—and Scé does not dispute— that he frequently stayed late and continued working without incurring overtime. (Pl.'s 56.1 ¶ 177.) And because he offers no further admissible evidence that he was treated differently than other employees who were not members of his protected class, his discrimination claim fails. See Moore v. Metro. Transp. Auth., 999 F. Supp. 2d 482, 501 (S.D.N.Y. 2013) ("Even under the liberal NYCHRL standard, no jury viewing this evidence could find [Defendants] liable under either McDonnell Douglas or a mixed motive analysis.").

Scé's also brings retaliation claims under the NYCHRL. (Pl.'s Mem., at 28.) Claims of retaliation under Title VII and the NYSHRL are similarly governed by the burden-shifting framework established in McDonnell Douglas. See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013). To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Hicks, 593 F.3d at 164 (quotation marks omitted). After a plaintiff makes a prima facie case of retaliation, the defendant must articulate a non-retaliatory reason for the employment action. Zann Kwan, 737 F.3d at 845. Finally, at the third step, "[t]he plaintiff must then come forward with [proof that the] non-retaliatory reason is a mere pretext for retaliation." Zann Kwan, 737 F.3d at 845. To satisfy this burden, the plaintiff

"must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." Zann Kwan, 737 F.3d at 845–46 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2526, 2533 (2013)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action—it is enough that the adverse action would not have occurred in the absence of the retaliatory motive." Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016) (citing Nassar, 133 S. Ct. at 2533).

The NYCHRL inquiry is "broader than its federal counterpart." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010) (quotation marks omitted). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112 (citations omitted).

Scé's filing of his EEOC charge and his initial Complaint are both protected activities. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (stating that a "protected activity" for retaliation purposes includes both formal litigation and "informal protests of discriminatory employment practices"). Defendants do not contest that they knew of these protected activities. However, to the extent Scé relies on the same "false and manufactured disciplinary proceedings" discussed above with respect to the First Amendment retaliation claim, this Court's prior analysis applies here. While claims under the NYCHRL are subject to a more liberal causation standard, "[a] plaintiff must still establish that there was a causal connection between his protected activity and the employer's subsequent action." Weber v. City of New York, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013). Scé's testimony and conclusory affidavit fail

to create a triable issue of fact to demonstrate any causal connection between his protected

conduct and these "investigations."

      Scé also argues that following these protected activities, D'Ulisse began posting

Equal Employment Opportunity ("EEO") material at Highway, which subjected him to increased

scrutiny.[8]  An employment action is "adverse" if it is "harmful to the point that [it] could well

dissuade a reasonable worker from making or supporting a charge of discrimination."

Burlington N., 548 U.S. at 57.  This Court will assume that, under the lenient standard of the

NYCHRL, D'Ulisse's conduct constitutes an adverse employment action.  Cf. Russell v. Cty. of

Rockland, 2017 WL 3189873, at *7 (S.D.N.Y. July 26, 2017) ("Courts routinely h[o]ld that,

when an employer disseminates an employee's administrative charge of discrimination to the

employee's colleagues, a reasonable factfinder could determine that such conduct constitutes an

adverse employment action." (quotation marks omitted)).  Moreover, because this conduct

occurred within days of the lawsuit, Scé demonstrates a causal connection.  See Littlejohn v. City

of New York, 795 F.3d 297, 319 (2d Cir. 2015) (a plaintiff may rely on temporal proximity

between the protected activity and adverse action to establish causation at the prima facie stage).

      Nonetheless, Defendants have articulated a legitimate, non-retaliatory reason for

these actions.  Specifically, D'Ulisse attempted to instruct members of the Wheel School about

anti-retaliation and anti-discrimination policies to prevent this conduct from occurring.  (Defs.'

56.1 ¶¶ 149–51.)  Scé relies on his own deposition testimony that Defendants' motivations for

---

[8]     Scé also contends that Defendants accused him of "hood surfing" on a vehicle.  (Pl.'s Dep., at 305:12–22.)
However, since this accusation occurred before he filed his lawsuit, it cannot be considered an adverse employment
action for his retaliation claim.  See United States v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 365, 404 (S.D.N.Y.
2018) ("It is axiomatic that an adverse employment action cannot serve as the basis for a retaliation claim if the
retaliatory action took place prior to the protected activity.")

posting this EEO material were punitive.[9]  His ruminations about D'Ulisse's motivation are entirely speculative.  Besides this conclusory testimony, he has not proffered any evidence that tends to show Defendants' reasons were pretextual.[10]  See White v. Eastman Kodak Co., 368 F. App'x 200, 202 (2d Cir. 2010) (summary order) (affirming summary judgment on retaliation claim because "[a]lthough [plaintiff] argues at length that [defendant's] asserted reason for firing him was pretextual, he presents no evidence to support this allegation").  And at this stage, Scé's evidence of temporal proximity alone is insufficient to demonstrate pretext even under the NYCHRL.  See Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 77 (2d Cir. 2015); see also E.E.O.C. v. Bloomberg L.P., 967 F. Supp. 2d 816, 836 (S.D.N.Y. 2013) (dismissing NYCHRL claim and noting that temporal proximity alone did not counter defendant's non-discriminatory reason supported by "clear evidence that [plaintiff's] performance continued to decline").  As such, Defendants' motion for summary judgment is granted as to the NYCHRL claims.

III.    Motion to Dismiss Claims in the Third Amended Complaint

The retaliation standard articulated above applies for Scé's Title VII, NYSHRL, and NYCHRL claims.[11]  But while a plaintiff need not plead all of the elements of a prima facie

---

[9]    Scé's citations to the Rosovich declaration are inapposite for this point because D'Ulisse is never mentioned in the declaration.  (See generally Rosovich Decl.)

[10]    As to the aiding and abetting claims against Sallie, Ciorra, and D'Ulisse, no liability can attach in the absence of underlying discriminatory or retaliatory conduct.  See Henderson v. Montefiore Med. Ctr., 2013 WL 1155421, at *7 (S.D.N.Y. Mar. 21, 2013).

[11]    A plaintiff must exhaust his administrative remedies before filing a Title VII claim.  Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam).  "Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency."  Williams, 458 F.3d at 70.  As relevant here, the Second Circuit has held that "'reasonably related' retaliation claims are excused from the exhaustion requirement only if they arise during the pendency of an EEOC investigation or a timely filed federal case."  Duplan v. City of New York, 888 F.3d 612, 624 (2d Cir. 2018) (emphasis in original).  This Court will assume for purposes of this motion that Scé's Title VII retaliation claims— which occurred during the pendency of this federal case and allege retaliation following his EEOC charge and this lawsuit—fall into the "reasonably related" exception to the exhaustion requirement.  See Duplan, 888 F.3d at 622–25; Legnani, 274 F.3d at 686–87.

case to survive a motion to dismiss, see Swierkiewicz v. Sorema, 534 U.S. 506, 510–12 (2002),

he still must plead facts plausibly showing that he suffered an adverse action.  Therefore, "for a

retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1)

defendants discriminated—or took an adverse employment action—against him, (2) 'because' he

has opposed any unlawful employment practice."  Vega, 801 F.3d at 90 (quoting 42 U.S.C. §

2000e-3(a)).

Here, Scé alleges retaliation explicitly related to the filing of his Second Amended

Complaint in June 2018.  (Pl.'s Mem., at 38.)  This date is important because Scé filed his EEOC

charge in September 2015, his initial federal Complaint in September 2016, and his First

Amended Complaint in April 2018.  Scé contends that the filing of his Second Amended

Complaint in June 2018 constituted a "protected activity" and any argument regarding temporal

proximity must be measured from that date.  Title VII protects an individual who has "opposed"

discrimination prohibited by the statute or "participated in any manner" in a Title VII

proceeding.  42 U.S.C. § 2000e-3(a).  This Court assumes, without deciding, that filing the

Second Amended Complaint—which added claims dealing with post-June 2018 events and

added Ge as a Defendant—constitutes a "protected activity" under Title VII and the NYSHRL.

Cf. Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) (finding that plaintiff engaged

in "protected activity" by notifying several co-workers that they might be contacted after he was

asked to provide a list of witnesses to the New York State Division of Human Rights).[12]

Moreover, the alleged disciplinary proceedings brought against Scé may constitute an adverse

employment action for purposes of a retaliation claim.  Campbell, 93 F. Supp. 3d at 177 n.30.

---

[12]     But see Redd v. N.Y. State Div. of Parole, 923 F. Supp. 2d 371, 389 (E.D.N.Y. 2012) ("[T]he court
seriously doubts that every single activity a plaintiff conducts in connection with an ongoing litigation can constitute
a separate 'protected activity' that would restart the causation clock; if that were true, just about any adverse
employment action taken during a lengthy discrimination case could be considered the result of retaliatory animus.).

"To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Duplan, 888 F.3d at 621 (quotation marks omitted).  The requisite causal connection may be demonstrated either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Littlejohn, 795 F.3d at 319 (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).

First, the Rosovich declaration will not be considered as evidence of direct retaliatory animus on this motion to dismiss.  See Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." (quotation marks omitted)).[13]  Second, Scé fails to demonstrate temporal proximity. While he filed his Second Amended Complaint in June 2018, the alleged disciplinary proceedings occurred in February and May 2019—at least eight and eleven months, respectively, after the amendment.  Without more, that is beyond the temporal proximity typically used to demonstrate causation.  See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citations and quotation marks omitted)); Avillan v. Brennan, 2018 WL 4680027, at *5

---

[13]     Specifically, the court may not properly consider materials outside the complaint without converting the motion to one for summary judgment.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Defendants did not move for summary judgment on this claim and this Court declines to convert Defendants' motion under Federal Rule of Civil Procedure 12(d).

(S.D.N.Y. Sept. 28, 2018) (holding that seven-month gap between protected conduct and retaliatory action may be "on its own . . . too attenuated to give rise to an inference of but-for causation"); De la Cruz v. City of New York, 783 F. Supp. 2d 622, 647 (S.D.N.Y. 2011) (holding that six months was not sufficiently close); see also Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation . . . ."). Accordingly, Scé's federal and state retaliation claims are dismissed.

Once again, the NYCHRL is afforded a more liberal construction, as it protects employees who "oppose[e] any practice forbidden under the law" from "conduct reasonably likely to deter a person engaging in such action." Ya-Chen Chen, 805 F.3d at 76 (alteration in original) (quotation marks omitted); see also N.Y.C. Admin. Code § 8-107(7). The plaintiff must show that he "took an action opposing [his] employer's discrimination" and that, as a result, the employer then "engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112 (citations omitted). However, for the same reasons explained above, Scé does not plausibly allege that these disciplinary proceedings, with no apparent link to his Second Amended Complaint, were rooted in retaliatory motives. Thus, his NYCHRL claim is dismissed.

IV.    Supplemental Application

By letter dated August 15, 2020, Scé makes a new application requesting: (1) leave to file a supplemental Statement of Material Facts pursuant to Local Rule 56.1; (2) leave to file a supplemental Memorandum of Law in opposition to Defendants' motions for summary judgment and to dismiss; and (3) a pre-motion conference in contemplation of a motion to amend

the Third Amended Complaint.  (ECF No. 135.)  This Court has afforded Scé and his counsel

numerous opportunities to focus Plaintiff's claims.  Scé has availed himself of each of those

opportunities, including being permitted to amend his Complaint while opposing a motion for

summary judgment on its earlier iteration.  Now, Scé wants to move the goalposts again and

amend his Complaint for a fourth time after summary judgment briefing is complete.

      As an initial matter, Scé filed his letter—without citing any case law or specific

authority under the Local Rules—over five months after the motions had been fully briefed.

Allowing Scé to inject new material unrelated to the summary judgment motion would spawn all

kinds of mischief and prejudice the Defendants.  Therefore, this Court denies Scé's first two

requests.  Cf. Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has

broad discretion to determine whether to overlook a party's failure to comply with local court

rules.").

      Because a scheduling order has been entered in this action, Scé's request to

amend his Third Amended Complaint is evaluated under Rule 16(b).[14]  Parker v. Columbia

Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000).  Under Rule 16(b), a scheduling order "shall

not be modified except upon a showing of good cause . . . ."  The "primary consideration" under

the good cause analysis is "whether the moving party can demonstrate diligence."  Kassner v.

2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  Here, Scé is attempting to add

---

[14]    A scheduling order directing Scé to file the Third Amended Complaint by August 5, 2019 was entered on
July 31, 2019.  (ECF No. 107.)  This is the last scheduling order expressly referencing a deadline for amended
pleadings.  And while subsequent scheduling orders do not reference a deadline for amended pleadings, there is
good reason for that.  By that juncture, the parties had completed discovery and this Court had already given Scé
multiple opportunities to amend his Complaint.  Simply put, neither the parties nor this Court had any reason to
anticipate another amended pleading.  Nor was this Court required to fix another deadline for amendment to the
pleadings when the deadline had passed.  See Levy v. Young Adult Inst., Inc., 2016 WL 3637109, at *4 (S.D.N.Y.
June 29, 2016) ("[T]he Court has not revised the deadline for amending the pleadings or given the parties any reason
to believe that it has changed.  The Court is not obliged to specify in every order extending deadlines which
deadlines have not been extended.").

allegations concerning a pending disciplinary matter that commenced after he filed the Third

Amended Complaint.  However, Scé's counsel acknowledged that the incident involving the

discharge of a firearm and its subsequent investigation had nothing to do with the allegations in

the Third Amended Complaint.  (ECF No. 105, at 8:24–9:6.)  And, at a minimum, counsel was

aware of the incident and investigation prior to filing the Third Amended Complaint.  Therefore,

Scé has not demonstrated diligence because his proposed amendments "rest[] on information that

the party knew or should have known, in advance of the deadline."  Lamothe v. Town of Oyster

Bay, 2011 WL 4974804, at *6 (E.D.N.Y. Oct. 19, 2011).

As to his new allegations, Scé similarly fails to comply with Rule 15.  Although

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires[,]"

Fed. R. Civ. P. 15(a)(2), even under such a liberal standard amendment may be denied "for good

reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party,"

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  An amendment at this

advanced stage of litigation—where discovery has been long closed—would unduly prejudice

Defendants.  See Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998) (finding

"[a] proposed amendment . . . [is] especially prejudicial . . . [when] discovery had already been

completed and [non-movant] had already filed a motion for summary judgment." (alterations in

original) (quotation marks omitted)).  Moreover, Scé's proposed amendments would be futile

because these new allegations—related to Defendants' possession of print-outs of the docket

sheet and press coverage from this case—do not rest on "factual allegations sufficient to raise a

right to relief above the speculative level" for a retaliation claim.  Twombly, 550 U.S. at 555.

Accordingly, his requests are denied.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to Scé's Title VII, § 1983, and NYCHRL claims.  This Court also grants Defendants' motion to dismiss Scé's retaliation claims under Title VII, the NYSHRL, and the NYCHRL.  The Clerk of Court is directed to terminate the motions pending at ECF Nos. 116 and 135, and mark this case as closed.

Dated: November 2, 2020                          SO ORDERED:
      New York, New York

                                      WILLIAM H. PAULEY III
                                         U.S.D.J.